IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KAREEM TAVARES MARTIN                                                  PLAINTIFF

V.                          Case No. 4:24-CV-000978-LPR-BBM

FRANK BISIGNANO,[1] Commissioner,
Social Security Administration                                         DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.    INTRODUCTION

Kareem Tavares Martin ("Martin") applied for Title II disability benefits on January 22, 2021. (Tr. at 463). He alleged disability from patellofemoral disorder, flat feet, knee pain, heel spurs, and adjustment disorder beginning December 1, 2020. (Tr. at 225). His claim was denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 228). Following the hearing, the ALJ denied

---

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

Martin's claim on March 31, 2022. (Tr. at 167–85). Martin filed a Request for Review, and

the Appeals Council remanded on March 1, 2023. (Tr. at 190–92). Following a second

hearing on July 11, 2023, the ALJ denied Martin's claim on October 5, 2023. (Tr. at 197–

211). Martin requested review of the ALJ's decision, and the Appeals Council remanded

on December 21, 2023. (Tr. at 218–22). A third hearing was conducted on June 14, 2024,

before a different ALJ, who denied Martin's claim again on August 7, 2024. (Tr. at 11–24,

116). The Appeals Council denied review on October 9, 2024, and the ALJ's decision now

stands as the final decision of the Commissioner. (Tr. at 1).

Martin seeks judicial review, and for the reasons stated below, this Court

recommends that the decision of the Commissioner be reversed and that this case be

remanded for further proceedings.

## II.    THE COMMISSIONER'S DECISION

The ALJ found Martin had not engaged in substantial gainful activity since his

alleged onset date of disability—December 1, 2020. (Tr. at 13). At step two of the

sequential five-step analysis,[2] the ALJ found that Martin had the following medically

determinable and severe impairments: right knee degenerative joint disease with a

meniscus tear; pes planus deformity with degenerative joint disease of the feet; mild

degenerative disc disease of the lumbar spine with radiculopathy; mild degenerative joint

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920(a)(4).

disease of the right hip; carpal tunnel syndrome of the right wrist; and adjustment disorder. (Tr. at 14). After finding that none of these impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Martin had the residual functional capacity ("RFC") to perform light work with the following limitations: never climbing ropes, ladders, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, crouching, kneeling, or crawling; and frequently handling with his right upper extremity. (Tr. at 17). The ALJ also found that Martin could use judgment to make simple work-related decisions; maintain concentration, persistence, and pace for simple tasks; understand, carry out, and remember simple work instructions and procedures; adapt to changes in the work setting that are simple, predictable, and easily explained; and have occasional interaction with coworkers, supervisors, and the public. *Id*.

The ALJ concluded that Martin was unable to perform his past relevant work. (Tr. at 22). Based on the testimony of a vocational expert ("VE"), however, the ALJ found that a significant number of jobs existed in the national economy for someone with the same age, education, work experience, and RFC as Martin. (Tr. at 23). As a result, the ALJ concluded that Martin was not disabled. (Tr. at 24).

## III.   DISCUSSION

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as

adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Martin's Arguments on Appeal

Martin asserts two grounds for reversal: (1) that the ALJ committed legal error in failing to evaluate the medical opinion of Dr. Edwin Watson; (Doc. 9 at 3–11); and (2) that the RFC is not supported by substantial evidence, *id.* at 11–20. The Court agrees that the ALJ committed legal error regarding his evaluation of Dr. Watson's opinion and confines its analysis to that point, as it is outcome determinative.

### 1.    Martin's Relevant Medical History

In January 2020, Martin reported to his physician that he had right knee pain and that he wore a knee brace. (Tr. at 712). For context, an October 2016 MRI revealed an "oblique tear of the medial meniscus and the posterior midbody through the inferior margin and extending in the extraarticular region with a small parameniscal cyst forming." *Id*. However, Martin also exhibited normal gait during the January 2020 examination, was walking daily at work, and had a normal MRI on his right knee in 2019. (Tr. at 712–13). The following month, in February 2020, Martin asked for another consult and more physical therapy "due to his knee giving him more problems." (Tr. at 710–11, 814).

At an examination on June 1, 2020, Martin reported that his right knee pain was worse in the morning but eased as he moved. (Tr. at 695). He had difficulty with deep squatting and reported that jogging and walking up or down hills caused pain. *Id*. Examination notes state that his 2019 right knee MRI was "essentially normal," with his medial meniscus "somewhat small but otherwise normal in appearance." *Id*. He had no joint inflammation and a "stable knee to varus/valgus and Drawers test." *Id*. Martin was diagnosed with "clinical findings" of patellofemoral syndrome/maltracking, flat feet (worse on the right), and limited dorsiflexion of the right ankle, and he was referred to orthotics. (Tr. at 696).

In January 2021, during a telehealth podiatry consultation, it was recommended that Martin continue to use orthotics and his knee brace. (Tr. at 760–62). He had small heel spurs, a ples panus deformity, mild midfoot degenerative changes, and a mild valgus deformity with minor spurring at the first metatarsophalangeal joint. (Tr. at 761). In April

2021, Martin contacted his doctor's office to request a cane due to losing his balance, which

he believed was related to his knee. (Tr. at 838). During a physical therapy consultation

that same month, Martin learned to walk, sit to stand, and climb up and down stairs with a

quad cane. (Tr. at 894–96). Overall, Martin's course of treatment was conservative,

including taking 400 mg of ibuprofen for pain. (Tr. at 60–61). Martin declined the offer of

steroid injections. (Tr. at 771). Martin reported he was still using his knee brace and cane

in July 2022. (Tr. at 1139).

### 2.    Medical Opinions Considered by ALJ

The ALJ considered medical opinions from four doctors who provided input on

Martin's physical impairments: Dr. Tara Akunna and Dr. Bernard Crowell, who each

examined Martin, and Dr. Alice Davidson and Dr. Jim Takach, who reviewed Martin's

medical records as state agency medical consultants. (Tr. at 20–22). Dr. Akunna saw

Martin in August 2021 and diagnosed him with degenerative disc disease, mild

osteoarthritis of the right hip, and knee pain. (Tr. at 962). During his visit with Dr. Akunna,

Martin's gait was normal. (Tr. at 961). He was able to rise from sitting without assistance,

stand on tiptoes, stand on heels, and tandem walk. *Id.* He was also able to bend and squat

without difficulty. *Id.* Dr. Akunna found Martin had limitations in bending, prolonged

walking, and sitting due to mild osteoarthritis and decreased range of motion. (Tr. at 962).

Dr. Akunna noted that Martin required the use of a cane occasionally and a knee brace

daily. *Id*.

Dr. Crowell examined Martin on May 2, 2023. (Tr. at 1184). Dr. Crowell found

Martin could occasionally lift and carry twenty pounds; frequently lift and carry ten

pounds; sit or stand for fifteen minutes at a time; walk for eighty minutes total in a workday; occasionally use his right upper extremity; occasionally operate foot controls with his right side; occasionally climb ramps or stairs; occasionally stoop, kneel, or crouch; and never climb ropes, ladders, or scaffolds. (Tr. at 1185–88).

Dr. Takach, who reviewed Martin's records in March 2021 at the initial determination, found his impairments non-severe. (Tr. at 149–50). In September 2021, at the reconsideration level, Dr. Davidson found Martin could perform light work with occasional balancing; stooping; kneeling; crouching; crawling; and climbing of ramps, stairs, ladders, ropes, or scaffolds. (Tr. at 159–60). After finding three of the four medical opinions unpersuasive, the ALJ determined that the opinion of Dr. Davidson was partially persuasive. (Tr. at 22).

### 3.    Medical Opinion of Dr. Edwin Watson

Martin argues that the ALJ erred by not considering the medical opinion of Dr. Edwin Watson, a physician who performed an in-person examination of Martin as part of a compensation and pension review for the Veteran's Administration ("VA"). (Doc. 9 at 3–11). Martin asserts that the ALJ wholly ignored Dr. Watson's opinion, providing no evaluation of its persuasiveness. *Id.* at 3. The Commissioner, while acknowledging that the ALJ did not "explicitly" evaluate Dr. Watson's opinion, claims that "nothing in the vague statement by Dr. Watson directly conflicts with the ALJ's RFC finding . . . ." (Doc. 11 at 8).

On June 10, 2021, Dr. Watson examined Martin and completed a Disability Benefits Questionnaire in conjunction with Martin's VA disability benefits. (Tr. at 913). Dr. Watson

noted that Martin had been diagnosed with right knee patellar femoral pain syndrome (PFPS), ACL tear, and meniscus tear. (Tr. at 914). Dr. Watson observed decreased range of motion in Martin's right knee, pain during weight bearing, and pain in both active and passive motion. (Tr. at 916–18). Dr. Watson noted tenderness or pain in the right knee upon palpation. (Tr. at 918). Dr. Watson also wrote that Martin required the prescriptive use of both a cane and knee brace. (Tr. at 926). As for functional limitations, Dr. Watson found that Martin could walk a quarter of a mile, sit for two hours, stand still for ten to fifteen minutes, and perform limited squatting. (Tr. at 932). These functional limitations were identical to Martin's self-reported limitations. (Tr. at 915).

### 4.   Evaluation of Disability Decision by Other Governmental Agency

On March 27, 2017, the Social Security Administration ("SSA") implemented new regulations for how ALJs treat disability decisions by other governmental agencies. Pursuant to 20 C.F.R. § 404.1504, a decision by another governmental agency (such as the VA) establishing that a claimant is disabled is not binding on the ALJ.[3]  Because a decision by another governmental agency is "inherently neither valuable nor persuasive," the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *See* 20 C.F.R. § 404.1520b(c).

However, § 404.1504 also explicitly provides that the ALJ is required *to consider*

---

[3] Coinciding with the updated regulations, the SSA withdrew its Social Security Ruling ("SSR") No. 06-03p, which had instructed that the disability determination of another agency "cannot be ignored and must be considered." *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263; 2017 WL 1105348 (Mar. 27, 2017), *amended by* 82 Fed. Reg. 16,869; 2017 WL 1245548 (Apr. 6, 2017).

*all of the supporting evidence* underlying the other governmental agency's decision in accordance with 20 C.F.R. § 404.1513(a)(1)–(4).[4] Section 404.1513(a) outlines what is evidence, including statements from a medical source about what the claimant can still do despite impairment and what impairment-related limitations or restrictions the claimant may have. Additionally, § 404.1513(a) requires the ALJ to consider §§ 404.1520b and 404.1520c, evaluating medical opinions "according to the rules pertaining to the relevant category of evidence."

To that end, on January 28, 2017, the SSA promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 404.1520c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§

---

[4] The 2017 update to § 404.1504 is consistent with Eighth Circuit precedent, which required the Commissioner to consider findings of disability by other federal agencies, even though not binding. *Morrison v. Apfel*, 149 F.3d 625, 628 (8th Cir. 1998). Where the Commissioner had fully considered the evidence *underlying* the final disability decision of the third-party governmental agency, that requirement was met. *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2016).

404.1520c(c), 416.920c(c)). The ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

In summary, current SSA regulations provide that the ALJ is not bound by a disability decision made by another governmental agency and is not required to explain any consideration of that decision. However, the ALJ *is* required to consider the underlying evidence supporting that governmental agency's disability decision in accordance with the rules pertaining to the specific category of evidence at issue. When considering the underlying medical opinions supporting another governmental agency's decision, the ALJ must abide by the persuasiveness standard outlined in 20 C.F.R. § 404.1520c. In essence, there is a difference between the disability determination of another governmental agency—which is not entitled to any deference—and the evidence supporting that disability determination, such as medical opinions—which the ALJ is required to consider. Here, the evidence at issue was the medical opinion of Dr. Watson that helped form the basis for the VA disability decision, and the ALJ was required to consider the persuasiveness of Dr. Watson's opinion.

### 5.    The ALJ Failed to Consider Dr. Watson's Medical Opinion

Turning to the ALJ's decision in this case, it makes no mention of Dr. Watson's medical opinion. In fact, the ALJ's decision makes no mention of Dr. Watson *at all*. The

ALJ states that Martin indicated in June 2021 that he could walk one quarter of a mile, sit for two hours, stand still for ten to fifteen minutes, and squat with limitations. (Tr. at 18). Martin reported these limitations to Dr. Watson, but the ALJ never considers that Dr. Watson agreed with these limitations following examination. *Id*. The ALJ neglects to discuss any of the details of Dr. Watson's physical examination of Martin. Consequently, the ALJ makes no finding regarding the persuasiveness of Dr. Watson's opinion. The ALJ did consider the "VA findings of total disability," finding that the VA disability determination "is based on a completely different body of law with standards inconsistent with the Social Security Act" and did "not have much probative value in evaluating the claimant's functional ability." (Tr. at 22). The ALJ's finding regarding the VA disability determination is consistent with the law, specifically 20 C.F.R. § 404.1520b(c), but the ALJ neglects to consider explicitly Dr. Watson's medical opinion that supported the VA's disability determination as required by 20 C.F.R. § 404.1504. At a minimum, the ALJ needed to articulate the supportability and consistency of Dr. Watson's opinion, as he did with the opinions of Drs. Akunna, Crowell, Takach, and Davidson. 20 C.F.R. § 404.1520c(b)(2); (Tr. at 20–22). The ALJ in this case did not do so, essentially ignoring Dr. Watson's medical opinion all together.

### 6.    Harmless-Error Analysis

When an ALJ commits a legal error, remand is required unless the error was harmless. *Lucus v. Saul*, 960 F.3d 1066, 1067 (8th Cir. 2020). To be considered harmless, there must be "'no indication that the ALJ would have decided it differently' if the error had not occurred." *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (quoting *Van*

*Vickle v. Astrue*, 539 F3d 825, 830 (8th Cir. 2008)). Here, the Commissioner argues that Dr. Watson's opinion regarding Martin's physical limitations does not directly conflict with the ALJ's RFC finding of light work with certain postural limitations; thus, any error in considering (or not considering) Dr. Watson's opinion was harmless.

Light work involves "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83–10, 1983 WL 31251, at *6. Dr. Watson's physical examination of Martin showed a decreased range of motion in his right knee, pain with weight bearing, and tenderness upon palpitation. Dr. Watson noted the prescriptive use of both a knee brace and cane. Dr. Watson's opinion was that Martin could walk up to one quarter mile, sit for two hours, and stand still for ten to fifteen minutes.

On its face, Dr. Watson's opinion regarding Martin's physical limitations is inconsistent with the requirements of light work, including "a good deal of walking or standing" or "standing or walking, off and on, for a total of approximately 6 hours." Furthermore, Dr. Watson's opinion is consistent with the severe impairments the ALJ found in this case, which included right knee degenerative joint disease with a meniscus tear. Although good reasons to find Dr. Watson's opinion unpersuasive may exist, this Court is left to speculate what those might be.[5]  Certainly, this is not a case where there is

---

[5] The Commissioner contends that it is unclear whether Dr. Watson's limitations for walking, standing, and sitting were in connection with an eight-hour workday, which the ALJ should have addressed in considering Dr. Watson's medical opinion.

"no indication" that the ALJ would have made a different decision. Rather, the ALJ could have been persuaded by Dr. Watson's opinion. In fact, had the ALJ found Dr. Watson's opinion even partially persuasive, the ALJ might have limited Martin to sedentary work. Even without considering Dr. Watson's opinion, the ALJ questioned the VE about limiting a hypothetical claimant to sedentary work. (Tr. at 135). Dr. Watson's opinion could have shifted the ALJ's decision in Martin's favor.

Had the ALJ limited Martin to sedentary work, whether the ALJ would have found the number of sedentary jobs available to Martin in the national economy significant is also unclear. The ALJ posed three hypotheticals to the VE. The first hypothetical corresponded to the RFC the ALJ found—light work with some postural limitations. (Tr. at 134). The VE identified two examples of jobs available in the national economy that fit that profile, representing approximately 330,000 jobs nationally. (Tr. at 134–135). The second hypothetical was identical except that the claimant would be limited to sedentary work. (Tr. at 135). The VE responded that there were two jobs that fit the profile—circuit board assembly with 1,100 jobs nationally and addresser with 2,000 jobs nationally. *Id.* The ALJ asked for an additional job, and the VE identified tube operator with 1,000 jobs nationally. *Id*. In the third hypothetical, the ALJ added the use of a single point cane for ambulation, and the VE stated that the same sedentary jobs would still fit the profile. *Id*.

Work exists in significant numbers in the national economy when it "exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). It does not matter if work "exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the

13

claimant], or whether [the claimant] would be hired if he [or she] applied for work." *Id.*

The determination of whether the Commissioner has satisfied the significant numbers

requirement is "[left] to the trial judge's common sense application of the . . . requirement

to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir.

1997) (citations omitted). Although the Eighth Circuit has not identified a definitive

number of jobs that constitutes the lower threshold for a significant number of jobs in the

national economy, it has held that as few as 10,000 jobs in the national economy is

sufficient to constitute significant national work. *Johnson v. Chater*, 108 F.3d 178, 180

(8th Cir. 1997). Here, the VE testified that there were just 4,100 jobs nationally available

at the sedentary level. Utilizing a common-sense application, it is unclear whether the ALJ

would have found 4,100 jobs significant.

Accordingly, on these facts, this Court "cannot determine whether the ALJ would

have reached the same decision denying benefits, even if he had followed the proper

procedure." *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). Because the

ALJ failed to articulate a finding of persuasiveness regarding Dr. Watson's opinion and

that error is not harmless, this Court recommends remand.[6]  Consequently, the Court need

not address Martin's remaining argument that the RFC is not supported by substantial

---

[6] As a final point, the Court notes that the Fourth Circuit and district courts within the Eighth
Circuit appear to support this Court's conclusion. *See Rogers v. Kijakazi*, 62 F.4th 872, 881 (4th Cir. 2023)
(holding that an ALJ erred when he did not discuss certain medical evidence related to the claimant's
menstrual cycle, and "to the extent that the VA's disability determination relied on the menstrual cycle
evidence, the new SSA rules required the SSA ALJ to consider that evidence.") (citing 20 C.F.R. §
404.1504)); *Mowrer v. Kijakazi*, 686 F. Supp. 3d 764, 767 (S.D. Iowa 2023) (reversing and remanding
because, in part, "the ALJ did not follow binding case law and regulations requiring the Commissioner to
consider the documentation underlying an agency action.") (citations omitted).

evidence.

## IV.   CONCLUSION

For the reasons stated above, the Court recommends that the Commissioner's decision be reversed and that this case be remanded for further proceedings.

DATED this 20th day of November, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

15